QUESTION:
Is an international banking corporation which establishes an international bank agency or representative office pursuant to Ch.77-157, Laws of Florida, subject to the provisions of part II or part VII, Ch. 220, F. S.?
SUMMARY:
An international bank agency organized and licensed pursuant to Ch. 77-157, Laws of Florida, is authorized to maintain credit balances. A credit balance, for this purpose, is a limited purpose deposit. An international bank agency, may upon a proper factual showing, as described above, qualify as a `bank' within the purview of part VII, Ch. 220, F. S.
Chapter 220, F. S., imposes a corporate income tax on income of corporations. Corporations defined in s. 220.03(1)(b) are subject to the direct income tax imposed pursuant to part II of the chapter. Part VII of the chapter imposes a corporate franchise tax measured by the income of banks and savings associations as defined in s. 220.62. The defined banks and savings associations are subject to a corporate `franchise tax measured by net income' in an `amount equal to 5 percent' of the entity's franchise tax base for the taxable year. Section 220.63. The tax imposed by part VII on defined `banks' is in lieu of the tax imposed in part II of the chapter on all other defined corporations. `Banks' within the statutory definition of s. 220.62 are entitled to a tax credit against the corporate franchise tax imposed by part VII if certain audit procedures are permitted by the designated federal agencies. The corporate franchise tax credit authorized by s. 220.68 shall not exceed the lesser of:
 (1) The intangible tax imposed upon [pursuant to s. 199.032(1), F. S.] and paid by [the defined bank]; or
 (2) Forty percent of the corporate franchise tax due pursuant to part VII.
If an international bank operation authorized by Ch. 77-157, Laws of Florida, is within the purview of the `bank' definition provided in s. 220.62(1), F. S., the international bank operation may qualify for any tax credit made available pursuant to s. 220.68, F. S. Section 220.62, F. S., was originally enacted by Ch.72-278, Laws of Florida, and defined a `bank' to mean `any bank as defined in s. 658.02(1), F. S. [the banking code].' In 1973, the Legislature, through the House of Representatives, held extensive hearings concerning the issue of Florida's taxation of all financial institutions operating or doing business in Florida. Chapter 73-152, Laws of Florida, was a product of those hearings. This law amended the definition of `bank,' s. 220.62(1), F. S., to provide:
 The term `bank' shall mean a bank holding company registered under the Bank Holding Company Act of 1956 of the United States, 12 U.S. Code, ss. 1841-1849, as amended, or a bank or trust company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia), of any state, or of any territory, a substantial part of the business of which consists of receiving deposits and making loans and discounts or of exercising fiduciary powers similar to those permitted to national banks under authority of the Comptroller of the Currency and which is subject by law to supervision and examination by state, territorial, or federal authority having supervision over banking institutions. (Emphasis supplied.)
Thus, an international bank agency, to qualify for the s. 220.68, F. S., tax credit, must meet two pertinent statutory requirements: it must be a bank or trust company incorporated and doing business under the laws of the United States or of any state or any territory, and a substantial part of the business must consist of receiving deposits, making loans and discounts, or exercising fiduciary powers.
International bank agencies are subject to all provisions of the Florida Banking Code except those identified in s. 659.67(2)(a), F. S. These bank agencies are also subject to all provisions of Ch. 607, F. S., that are not inconsistent with the Florida Banking Code, relating to foreign corporations. Section 659.67(2)(b), F. S. An international banking corporation may not, pursuant to s. 659.67(4)(a), F. S., transact banking business or maintain an office within the state for the purpose until it has, among others, complied with the applicable requirements of Ch. 607. The Comptroller's office has also advised me that the present license applicants have complied with the incorporation requirements of Ch. 607.
The second standard of the s. 220.62(1), F. S., bank definition provides that a substantial part of the `bank's' business must consist of `receiving deposits and making loans and discounts or of exercising fiduciary powers similar to those of national banks.' Section 659.67(2), F. S., subjects international bank agencies to the Florida Banking Code but applies some restrictions that are not applicable to Florida domestic banks. Section 659.67(6)(e), F. S., expressly states that international banking corporations are authorized to transact limited business in Florida:
 An international banking corporation licensed under the terms of this act is authorized to transact only such limited business in this state as is clearly related to and is usual in international or foreign business and financial international commerce. No such international banking corporation shall exercise fiduciary powers or receive deposits, but it may maintain for the account of others credit balances necessarily incidental to, or arising out of, the exercise of its lawful powers. (Emphasis supplied.)
This operative statutory authority is similar or analogous to that provided in 12 U.S.C. § 611, et seq. The international bank corporation is prohibited from receiving general deposits similar to those received by Florida domestic banks, but it is expressly authorized to maintain `credit balances' which appear to be a type of limited purpose deposit. The `credit balance' proviso in s. 659.67(6)(e), F. S., appears to relate back to and modify the general deposit prohibition. The phrase `credit balance' is not defined or described in Ch. 77-157, supra, or the Florida Banking Code. The Comptroller, by letter of November 29, 1977, has advised me that a proposed rule, drafted pursuant to the authority of s. 659.67(12), F. S., will define credit balance for Florida's international banking purposes:
 No international corporation shall receive deposits at its agency office in Florida but its agency office may maintain for the account of others credit balances necessarily incidental to, or arising out of, the exercise of its lawful powers. Credit balances may include proceeds of loans to customers where such proceeds are not immediately disbursed; proceeds of incoming remittances; proceeds of collections made for customers' accounts; funds delivered by customers to settle letters of credit accounts with the banking agency prior to settlement date; proceeds of export bills negotiated (i.e., drafts drawn under letters of credit issued by and received from other financial institutions); cash collateral or compensating balances from a customer; funds delivered prior to execution of money transfers undertaken on behalf of customers; funds delivered or received on account of the purchase or sale of securities for the account of customers; and funds received from customers to cover currency transactions or as the result of currency transactions on behalf of customers.
 Credit balances are offset, reduced or disbursed in accordance with the arrangement between the banking agency and its customers and the underlying transaction giving rise to the credit balance. For example, if a credit balance were the result of honoring drafts on the customer, the credit balance would be offset by the amounts paid against such drafts. Credit balances do not include domestic accounts in which business or personal banking customers utilize the account balances for purposes unrelated to the business of the banking agency, such as the payment of customers' rent, telephone bills, taxes or other such purely domestic purposes. Customer credit balances must always be necessarily incidental to or arise out of the banking agencies' involvement with international or foreign business and the financing of international commerce.
An international bank agency would not be violating the deposit prohibition of s. 659.67(6)(e), F. S., since the same sentence expressly authorizes credit balances as a limited purpose deposit. Clearly, the legislative intent and purpose of s. 659.67, F. S., is to attract international banking activity, international investment, and foreign trade to the State of Florida. The restrictions placed on international banking corporations and agencies, prohibiting them from exercising fiduciary powers or receiving deposits, was for the obvious purpose of minimizing the competitive effect that international banking corporations and agencies may have on Florida domestic banks. This intent strongly supports the position that the word `deposit,' as found in s. 659.67(6)(e), was used in a very particular manner ot indicate the type of deposits, i.e., the normal type of deposits which the average Florida bank would be involved with in its operations.
The same legislative intent and purpose of the 1973 amendment, Ch.73-152, supra, to the s. 220.62(1), F. S., definition of `banks' is apparent. The result of this definitional change was to broaden the definition of the term `bank,' by permitting additional types of financial institutions to be included within the definition of a `bank.' This amendment also indicates that the Legislature's use of the word `deposit' in s. 220.62(1) was not in a traditional or narrow sense, but in a very general sense, so that any financial institutions exercising banking powers, as applied to that class of `bank,' could qualify as a `bank' within the ambit of s.220.62(1).
The classification of credit balances held by an international banking agency as a limited purpose deposit within the meaning of s. 220.62(1), F. S., partially satisfies the second requirement that an international banking corporation must meet under s.220.62(1) to constitute a bank. The final step in satisfying the second requirement is met by the international bank agency showing that a substantial part of the business of the international banking agency consists of receiving deposits, making loans, and discounts. This determination must be made by the Department of Revenue upon a sufficient factual showing made by the international banking agency.
I have reviewed the Department of Revenue's October 18, 1977, Statement of Position regarding the applicability of part VII, Ch. 220, F. S., to an international bank agency. This position is quite persuasive, but a complete review of the history of s.220.62 and Ch. 77-157, supra, and the Comptroller's proposed rules defining `credit balance' leads me to the opinion, absent judicial or legislative clarification, that an international bank agency is a `bank' within the purview of s. 220.62.
Prepared By: Staff